1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9   Raymond Manquero,                           No. CV-21-01246-PHX-JAT

10                    Plaintiff,                 **ORDER**

11  v.

12  Commissioner of Social Security
    Administration,
13
                     Defendant.
14

15          Pending before the Court is Plaintiff Raymond Manquero's appeal from the

16  Commissioner of the Social Security Administration's ("SSA") denial of his application

17  for Supplemental Security Income ("SSI") benefits. (Doc. 1.) The appeal is fully briefed

18  (Docs. 18, 21, 22), and the Court now rules.

19  **I.      BACKGROUND**

20          **A.      Factual Overview**

21          Plaintiff has at least a high school education and no past relevant work experience.

22  (Doc. 15-3 at 23.) Plaintiff filed his SSI claim on September 23, 2016, initially alleging

23  disabilities beginning on October 25, 2013, including cervical degenerative disc disease,

24  hyperlipidemia, headaches, metatarsalgia and varus deformity, soft tissue mass, a history

25  of medial meniscus tear, depressive disorder, and dependent personality disorder. (Doc.

26  15-3 at 13, 15, 17–18.) Plaintiff later amended his alleged onset date to September 23,

27  2016. (Doc. 15-3 at 13.) On the amended alleged onset date, Plaintiff was 56 years old.

28  (*See* Doc. 15-3 at 23, 285.) His claim was initially denied on October 31, 2019, and on

1   reconsideration, but that decision was later vacated and remanded by the SSA Appeals
2   Council on June 25, 2020. (Doc. 15-3 at 13; Doc. 15-4 at 143–46; Doc. 21 at 1.) Plaintiff
3   subsequently requested a hearing that was held telephonically on October 5, 2020. (Doc.
4   15-3 at 13.) On November 4, 2020, the ALJ issued a decision finding Plaintiff not disabled.
5   (Doc. 15-3 at 13–25.) The SSA Appeals Council denied Plaintiff's request for review on
6   June 1, 2021, and adopted the ALJ's decision as the SSA's final decision. (Doc. 15-3 at 1–
7   6.) Following this unfavorable decision, Plaintiff filed the present appeal. (Doc. 1.)

8          **B.      The SSA's Five-Step Evaluation Process**

9          To qualify for social security benefits, a claimant must show he "is under a
10  disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if he suffers from a medically
11  determinable physical or mental impairment that prevents him from engaging "in any
12  substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process
13  for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1).
14  Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

15         At the first step, the ALJ determines whether the claimant is "doing substantial
16  gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial
17  gainful activity is work activity that is both "substantial," involving "significant physical
18  or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

19         At the second step, the ALJ considers the medical severity of the claimant's
20  impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically
21  determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe
22  impairment" is one which "significantly limits [the claimant's] physical or mental ability
23  to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and
24  aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

25         At the third step, the ALJ determines whether the claimant's impairment or
26  combination of impairments "meets or equals" an impairment listed in Appendix 1 to
27  Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled.
28  *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual

functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform his "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—he "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

## C.    The ALJ's Application of the Factors

At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (Doc. 15-3 at 17.)

At the second step, the ALJ determined that Plaintiff's cervical degenerative disc disease constituted a severe impairment under 20 C.F.R. § 416.920(c). (*Id.* at 17–20.) The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.*)

At the third step, the ALJ determined that neither Plaintiff's impairments nor a combination of Plaintiff's impairments met or equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 20.) After evaluating the record, the ALJ determined Plaintiff's RFC:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except [Plaintiff] can frequently climb ladders, ropes or scaffolds;

1
2

> frequently reach overhead bilaterally; and tolerate occasional
> exposure to unprotected heights.

3 (*Id.*)

4    At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (*Id.*

5 at 23.)

6    At the fifth step, the ALJ concluded that given Plaintiff's age, education, work

7 experience, and RFC, a significant number of jobs existed in the national economy that he

8 can perform. (*Id.* at 23–24.) The ALJ reached this conclusion based on the testimony of a

9 vocational expert ("VE") who testified that Plaintiff could work as a laundry worker, hand

10 packager, and kitchen helper. (*Id.* at 24.) The requirements of these jobs are described in

11 the Dictionary of Occupational Titles ("DOT"). (*Id.*) The VE's testimony was based on

12 hypotheticals provided by the ALJ and based on Plaintiff's RFC. (*Id.* at 23–24.)

13 Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of SSI from

14 the alleged onset date through November 4, 2020. (*Id.* at 24–25.)

15 **II.    LEGAL STANDARD**

16    This Court may not overturn the ALJ's denial of disability benefits absent legal error

17 or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

18 "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept

19 as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)

20 (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).

21 On review, the Court "must consider the entire record as a whole, weighing both the

22 evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may

23 not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting

24 *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws

25 inferences, resolves conflicts in medical testimony, and determines credibility. *See*

26 *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450,

27 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more

28 than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The

Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.   DISCUSSION

Plaintiff raises two issues on appeal: (1) the ALJ improperly gave Dr. Michael Bugola's medical opinion minimal weight and (2) the Court should remand for an award of benefits or a new hearing. (Doc. 18 at 7–14.)

### A.   Dr. Bugola's Medical Opinion and Plaintiff's RFC

For claims filed prior to March 2017, the weight that a particular medical opinion is afforded is based on who is giving that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Id.*; *see* 20 C.F.R. § 404.1527(c)(1)–(2). But a treating physician's opinion is not necessarily conclusive. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). If a treating physician's opinion is contradicted by another physician's opinion, an ALJ may reject it "by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

Under 20 C.F.R. § 404.1545(a)(2), the ALJ is required to consider all the "medically determinable impairments of which [the ALJ is] aware, including [the plaintiff's] medically determinable impairments that are not-severe . . . ." when assessing the RFC. 20 C.F.R. § 404.1545(a)(2). The court "will affirm the ALJ's determination of [the plaintiff's]

RFC if the ALJ applied the proper legal standard and [her] decision is supported by substantial evidence." *Bayliss*, 427 F.3d at 1217. "The ALJ assesses a claimant's RFC based on all the relevant evidence in [the] case record," to determine the claimant's capacity for work. *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quotation marks and citation omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ should consider a claimant's ability to meet physical and mental demands, sensory requirements, and other functions. *See* 20 C.F.R. §§ 404.1545(b)–(d), 416.945(b)–(d). "[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. The RFC therefore should be exactly the same regardless of whether certain impairments are considered severe or not." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quotation marks, internal citations, and emphasis omitted). Additionally,

> The RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate. In other words, the ALJ must take the claimant's subjective experiences of pain into account when determining the RFC.

*Laborin*, 867 F.3d at 1153 (quotation marks, internal citations, and emphasis omitted). The ALJ is not required to include unsubstantiated impairments in the questions posed to a vocational expert. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("[I]n hypotheticals posed to a vocational expert, the ALJ must only include limitations supported by substantial evidence.").

"When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

1     Plaintiff argues that the ALJ erred "by rejecting Dr. Bugola's assessment in the
2  absence of specific and legitimate reasons based on substantial evidence." (Doc. 18 at 7;
3  *id.* at 7–13.) Specifically, Plaintiff argues that the ALJ improperly concluded that (1) Dr.
4  Bugola's assessment was internally inconsistent and (2) Dr. Bugola's suggested
5  restrictions did not match the record as a whole. (*Id.* at 7–13.) The Commissioner argues
6  that the ALJ "properly evaluated the medical opinion evidence . . . and her findings were
7  supported by substantial evidence." (Doc. 21 at 4; *id.* at 4–8.)

8     Dr. Bugola completed a medical assessment of Plaintiff on September 10, 2019.
9  (Doc. 15-9 at 723–33.) He outlined Plaintiff's medical history, and listed Plaintiff's chief
10 complaints, medications, allergies, daily living activities, and social, family, medical, and
11 work history. (*Id.* at 723–24.) He also assessed Plaintiff's vital signs; general disposition
12 and health; gait and station; neurological, head, ears, eyes, nose, throat, respiratory,
13 cardiovascular, and abdominal systems; and whether Plaintiff used an assistive device. (*Id.*
14 at 724–25.) Additionally, he checked Plaintiff's pulse, strength and tone, sensory levels,
15 fine motor skills, deep tendon reflexes, range of motion, back, and skin. (*Id.* at 725–26.)

16    After assessing Plaintiff's health, Dr. Bugola determined Plaintiff's physical ability
17 to do work-related activities. (*Id.* at 727–33.) In "Lifting-Carrying," he opined that Plaintiff
18 can occasionally carry and lift 11–20 pounds, frequently carry and lift up to 10 pounds, and
19 never lift 21–100 pounds.[1] (*Id.* at 727.) In "Sitting-Standing-Walking," he opined that
20 Plaintiff can walk for one hour, stand for two hours, and sit for two hours at one time
21 without interruption and that Plaintiff can walk for two hours, stand for four hours, and sit
22 for eight hours in an 8-hour workday. (*Id.* at 728.) He also opined that Plaintiff did not
23 require the use of a cane to ambulate. (*Id.*) In "Use of Hands," he opined that Plaintiff can
24 reach overhead occasionally; reach in all other directions, handle, and push-pull frequently;
25 and finger and feel continuously with both hands.[2] (*Id.* at 729.) In "Use of Feet," he opined

26

27 [1] Being able to perform an activity "occasionally means very little to one-third of the time." (*Id.* at 727) Being able to perform an activity "frequently means from one-third to two-thirds of the time." (*Id.*)
28 [2] Being able to perform an activity "continuously means more than two-thirds of the time." (*Id.* at 727.)

1    that Plaintiff can operate foot controls continuously. (*Id.*) In "Postural Activities," he

2    opined that Plaintiff can never climb ladders or scaffolds; occasionally climb stairs and

3    ramps, stoop, kneel, crouch, and crawl; and continually balance.[3] (*Id.* at 730.) He also

4    opined that none of Plaintiff's impairments affect his hearing or vision. (*Id.*) In

5    "Environmental Limitations," he opined that Plaintiff can never tolerate exposure to

6    unprotected heights and occasionally tolerate exposure to moving mechanical parts and

7    vibrations. (*Id.* at 731.) He also opined that Plaintiff can frequently tolerate exposure to

8    operating a motor vehicle; humidity and wetness; dust, orders, fumes, and pulmonary

9    irritants; extreme cold; extreme heat; and loud noise. (*Id.*) Based on the assessment, he

10   concluded that Plaintiff was capable of performing activities like shopping; travelling

11   without a companion for assistance; ambulation without using a wheelchair, walker, or two

12   canes or two crutches; walking a block at a reasonable pace on rough or uneven surfaces;

13   climbing a few steps at a reasonable pace with the use of a single hand rail; preparing a

14   simple meal and feeding himself; and sorting, handling, and using paper files. (*Id.*) He also

15   concluded that these limitations lasted or would last longer than twelve consecutive

16   months. (*Id.* at 732.) Dr. Bugola's final diagnoses were as follows:

> Subtle right occipital mass with associated headache disorder, etiology indeterminate. Objective findings: Evidence for subtle firm mass, right occipital region, with minor associated tenderness.
> Cervical/lumbar spondylosis. Objective findings: Focal reproducible tenderness involving the cervical/lumbar paraspinal musculature, impaired cervical range of motion. In addition, review of medical record[] does include MRI scan of cervical spine which does reveal evidence for spondylosis outlined above. Condition appears stable.
> Probable left knee degenerative joint disease. Objective findings: Minor crepitation, left knee. Condition appears stable.
> Psychiatric disorder. Diagnosis and disability assessment deferred to the psychological portion of disability examination.

(*Id.*)

_____

[3] Dr. Bugola's assessment never distinguishes between "continually" and "continuously." (*See Id.* at 723–33.)

1    Having reviewed all of this information, the ALJ gave Dr. Bugola's assessment
2    minimal weight:
3
4        [I] give[] minimal weight to the opinion of [Dr. Bugola]. He
         opined generally that [Plaintiff] can perform at light exertion,
5        but sit for a total eight hours, stand for a total of four hours and
         walk for a total of two hours in an eight-hour workday. Further,
6        he opined that [Plaintiff] would be limited to frequent reaching,
         handling, pushing and pulling, and occasional overhead
7        reaching bilaterally. Lastly, he opined that [Plaintiff] would
         require postural and environmental restrictions, including
8        among other things, never climbing ladders or scaffolds and no
         exposure to unprotected heights. The opinion is simply not
9        congruent with the objective clinical evidence of the
         consultative examination or indeed the medical evidence in the
10       longitudinal record. While [Plaintiff] has evidence of
         degenerative disc disease, there is no evidence of any nerve
11       root impingement. The one-time finding of sensory
         disturbance of the left upper extremity . . . has apparently
12       resolved. The consultative examination shows normal 5/5
         strength in the bilateral upper and bilateral lower extremities.
13       The examination of fine manipulation was normal. The
14       extremely limited residual functional capacity is incongruent
         with the findings of pain on palpation of the cervical paraspinal
15       muscles in view of the remaining examination. It is also
16       incongruent with the evidence as a whole. Indeed, the doctor's
         notes state, "Condition may limit the claimant's mobility."
17       Minimal weight can be given to this opinion.
18
19
20
21   (Doc. 15-3 at 22–23 (internal citations omitted).)
22       Specific and legitimate reasons based on substantial evidence support the weight the
23   ALJ gave Dr. Bugola's assessment. The ALJ reasonably determined that Dr. Bugola's
24   assessment should be afforded minimal weight for two reasons: (1) his assessment was
25   inconsistent with the objective clinical evidence of his own examination and (2) his
26   assessment was inconsistent with the other evidence in the record. (Doc. 15-3 at 22–23.)
27       First, the ALJ reasonably determined that Dr. Bugola's assessment was inconsistent
28   with the objective clinical evidence of his own examination. (*Id.*); *see Trevizo v. Berryhill*,

1    871 F.3d 664, 675 (9th Cir. 2017) ("The ALJ can meet this burden by setting out a detailed

2    and thorough summary of the facts and conflicting clinical evidence, stating his

3    interpretation thereof, and making findings." (quoting *Magallanes*, 881 F.2d at 751));

4    *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (internal

5    inconsistencies in medical opinions constitute relevant evidence). For example, Dr. Bugola

6    found that Plaintiff's grip strength was normal, rated his strength 5/5, observed that he had

7    normal upper and lower extremity muscle bulk, and found that Plaintiff "describe[d] pain

8    with palpation about the cervical paraspinal musculature, lumbar paraspinal musculature,

9    and minimally about the right occipital region." (Doc. 15-3 at 22; Doc. 15-9 at 725.) Given

10   this evidence, Dr. Bugola recommended limitations for Plaintiff that the ALJ believed were

11   too strict. (Doc. 15-3 at 22–23; Doc. 15-9 at 723–33.)

12          Second, the ALJ determined that Dr. Bugola's assessment did not comport with the

13   other evidence in the record. (Doc. 15-3 at 22–23.) For example, medically, Plaintiff had

14   normal motor strength, gait, and range of motion; normal muscle bulk, full strength, normal

15   sensations, intact fine motor skills, normal reflexes, full range of motion in his joints, and

16   negative straight leg raising; an unremarkable brain MRI; mostly normal echocardiogram

17   results; a conservative and routine treatment history for cervical and lumbar spine issues;

18   normal cervical range of motion without pain on multiple visits with a chiropractor;

19   unremarkable neck examinations; and diagnostic imaging reports showing no evidence of

20   a meniscus tear. (Doc. 15-3 at 17–18, 21–22; *see, e.g.*, (Doc. 15-8 at 471, 474, 482, 503,

21   575, 577, 589, 606–15; Doc. 15-9 at 697, 700, 712, 725–26, 734–35, 738, 777, 779; Doc.

22   15-10 at 796, 799, 875, 1008, 1026, 1056).) And, as to daily activities, he plays the piano,

23   drives, and he reported being able to prepare meals, do housework, play with pets, attend

24   doctors' appointments, and maintain his personal hygiene. (*See* Doc. 15-3 at 22, 40 (citing

25   (Doc. 15-8 at 599–600).)

26          The Court finds that a reasonable person examining the evidence could come to the

27   ALJ's conclusions. The fact that Dr. Bugola's objective medical findings during his

28   examination and the other evidence in the record could be interpreted differently has no

effect on this Court's ruling. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). Thus, the ALJ did not err by giving Dr. Bugola's assessment minimal weight.

### B.    Further Proceedings

Finally, Plaintiff requests a remand for further proceedings or a calculation of benefits pursuant to the credit-as-true rule. (Doc. 18 at 14; Doc. 22 at 8.) But the Court is affirming the ALJ's decision; therefore, the Court denies Plaintiff's request for a remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), *as amended* (Jan. 25, 2018) (A direct award of benefits is proper "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits.").

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 4th day of August, 2022.

James A. Teilborg
Senior United States District Judge